Parker, J.
On the 17th day of January, 1891, the defendant, James R. Rogers as principal, and the defendant, Jess Richcreek and the plaintiff as sureties, made and gave to the defendant, the First National Bank of North Baltimore,Ohio, their promissory note of that date for three thousand dollars, payable ninety days after date, with interest at 8 per cent, per annum. The plaintiff says in his amended petition, that he signed said note as co. surety of the defendant Richcreek; and wholly without consideration, It is not controverted that James R. Rogers was the principal debtor, and the plaintiff and Richcreek were his sureties, and that on the 22nd day of February, 1892,said Bank obtained judgment on said note against Rogers, Richcreek and plaintiff for $2134.21, and caused execution to issue thereon. Because of the insolvency of Rogers, the plaintiff was compelled to and did pay upon said judgment one-half thereof, and the other half was paid by said Richcreek.
It is claimed in the petition that the bank held certain property or securities belonging to the principal debtor, upon which it had or should have realized something to be applied in satisfaction of this claim, but the controversy arising upon that is not submitted to us for our consideration.
The petition further sets forth that the defendant Rich-creek has received from the principal Rogers, by way of indemnity on account of his suretyship, certain shares of stock of said bank of the value of about eleven hundred dollars, and the plaintiff seeks to require Richcreek to share this indemnity with him as his co-surety.
Richcreek,in his separate answer,denies that he signed as co-surety with the plaintiff, and avers that the bank stock .referred to, was transferred to him alone by Rogers before he, Richcreek, became surety upon this note, and for his sole indemnification; that he required this indemnity as a *648 condition precedent to his signing said note, and he says that therefore he is not required to share the proceeds of this indemity with Niece.
It appears that at the time this note was given Niece was the president of said bank, Richcreek was its vice president, and Rogers was a stockholder therein, and a member of the discount committee that had submitted to it questions relating to loans applied for. That Rogers desired to borrow from the bank three thousand dollars; that a rule of the bank with which all the parties were acquainted, provided that upon a loan being made upon a note, as in this instance, the borrower should be required to sign and also procure the signatures of two sureties. There is some testimony tending to show that before this loan was made, but after Niece had spoken to the cashier of the bank about it, a conversation was held in the bank between Richcreek, Niece,’ and the cashier on the subject, in which Niece and Rich-creek agreed that they would become sureties for Rogers upon the note to be given for the proposed loan. Niece testifies to this conversation and agreement, but it is denied by Richcreek, and not remembered by the cashier, so that we do not base any of our conclusions of fact upon this testimony, but base them upon the testimony which is given by Niece, Richcreek and Rogers, each testifying to a part, but neither controverting or disputing that testified to by the other, nor testifying to anything inconsistent therewith. In other words, the following facts are uncontroverted: The note in question was prepared at the bank, and signed by Rogers, who afterwards applied to Niece to sign as surety, which Niece did. At the time Niece signed,he inquired of Rogers who Rogers expected to have sign as the other surety, and was informed by Rogers that he expected to have Rich-creek sign, though Rogers now testifies that he thought at the time that he might procure his father as a surety instead of Richcreek, This he does not seem to have communicated *649 to Niece. At all events it appears that Niece understood that the rule of the bank requiring two sureties upon the note would be complied with, and that he would share the burden of this obligation with another, either Richcreek or somebody else. Later on the same day, Rogers applied to Richcreek to sign as surety. Richcreek seemed to have been reluctant about signing, and said something to Rogers to the effect that he did not care to sign so large a note, and Rogers informed him that he expected to pay a thousand dollars upon this note within a few days, which, by the way, he did. Richcreek then said that if Rogers would assign to him'his stock in said bank, the value of which was nearly equal to one-half of the amount of the note after being reduced by the payment of the one thousand dollars proposed, he, Richcreek, would sign as surety.
This conversation occurred in the place of business of Richcreek. Rogers, thereupon, went to the place where he had his bank stock deposited, and procured it and brought it to Richcreek, signed his name to the blank assignment printed thereon, and delivered the stock to Richcreek, who thereupon signed the note under the name of Niece as surety, This stock has ever since been held by Richcreek exclusively, The blanks in the printed assignment were subsequently filled in with the name of Richcreek and a date, but we find that the assignment was made immediately before Richcreek signed the note, and that it was the intent and purpose of both Rogers and Richcreek, that this bank stock should be held by Richcreek as his exclusive indemnity.
Upon this state of facts, we have found that Richcreek and Niece were co-sureties for Rogers upon this note. It does not appear that Richcreek suggested or thought of going upon the note as surety for Niece. It is doubtful whether, under the circumstances, he could have thus limited his liability without the knowledge of Niece.
He knew the rule of the bank requiring two sureties upon *650 this class of paper. He knew that Niece signed with knowledge of this rule of the bank. In the absence of any agreement or understanding between him and Niece to the contrary, he must have known therefore that Niece expected to' share this responsibility with another, and that therefore that other would be his co-surety with all the rights and obligations arising out of that relation.
In the case of Marlin Oldham v. Daniel Broom, in 28 Ohio St. Reports., at page 41, it is said in the third syllabus: “As between accommodation makers of a promissory note, the presumption is that they are co-sureties, and as such liable to each other to contribution.” We find nothing in the facts of this case to overcome this presumption. It is also said in the syllabus in that ¿ase in the fourth paragraph:
“Where a joint note is signed by the principal and by one as his surety, and is entrusted by a surety to the principal without limit on his authority, such surety thereby, impliedly authorizes the principal to obtain such additional sureties or guarantors as may be required to make the paper available for the purposes intended by the original makers, and the sureties or guarantors so obtained may stipulate the terms of their liability, as between themselves and prior parties.”
This must be understood with the qualification that the rights and just expectations of one who has already signed as a surety that those subsequently signing it will be co-sureties with him, shall not be defeated by such subsequent signers who sign with knowledge that the surety first signing expects those subsequently signing to become co-sureties with him. This qualification is implied in the language of Johnson, J., delivering the opinion, in the last paragraph thereof, at page 55. But, I repeat, that there is nothing in this case to show that Richcreek signed as surety for Niece, and the question here is, whether a co-surety may secure to himself indemnity,and not share it with his co surety. The general rule upon the subject is well stated in sec. 268 *651 of the second edition of Brant on Suretyship and Guaranty, as follows.
“If one of several sureties, after all have signed, and before the debt has been paid, and without any agreement to that effect before he became liable, obtains from the principal anything for his indemnity, such indemnity inures to the benefit of all the sureties, and the surety obtaining it immediately becomes the trustee of it for the benefit of all the sureties, even though he obtained it by his own exertions, and it was intended for his sole benefit. In such case, as all the sureties are alike liable for a common principal, it will be presumed that the surety taking the indemnity takes it for the benefit of all the sureties, or if he does not, then his taking from the effects of the common principal for his sole benefit is a fraud on the other parties, and he will not be permitted to have the benefit of the indemnity alone, but must share it with the others. Where, after two sureties become bound, one received indemnity from the principal with which he paid more than one-half the debt, and the. other surety paid the remainder, it was held that the latter might recover from the former one-half the amount which he had paid It has also been held that the surety who has partial indemnity in his hands, and pays all the debt, can only recover from his co-surety one-half the sum which would remain after applying the amount of the indemnity on the sum paid.”
Counsel for Bichcreek lays some stress upon the words “and without any agreement to that effect before he became liable’’, appearing in the paragraph just quoted,and insists that this states, or implies, an exception to or qualification of the rule, and that where the indemnity is taken, as was done in this case, before the surety signs, and is required as a condition precedent to his signing, he should not be required to share it with his co-surety. This suggestion of ah exception to the rule appears in other sections of Brant on Suretyship, and also appears in vol. 1 of Leading Cases in Equity, at page 171, in note to Deering v. Earl of Winchelsea.
*652 We have carefully examined all the authorities cited by Brant and in The Leading Oases in Equity upon this proposition, and a great many others, and we have not found any authority in which it is held that the rule as to sharing the indemnity is different if the indemnity is required be^ fore and as a condition precedent to signing, unless it is so done with the knowledge and consent of the other co-surety. In the case of Moore v. Moore, 4 Hawks, 358 (reported in 15 Am. Dec., 523) the law is stated in the syllabus as follows:
“If indemnity be taken by a surety to secure him from loss and as a condition precedent to his becoming surety, his co-sureties are not entitled to the benefit of the indemnity until after he, for whose benefit it was given, is fully repaid, Indemnity taken by one surety cannot be reached by his co-sureties, unless it was taken for their benefit, or in fraud of their rights.”
But in looking into the facts in this case, we find that the co-surety who took the indemnity, did so with knowledge and in the presence of the complainant, his co-surety, who required none. In fact, the complainant was a witness to the contract which gave his cosurety this indemnity, and as is said by Henderson, J., in the course of his opinion, “the facts negative all idea that the defendant was acting for their joint benefit,” and he continues, “he has therefore no claim, either on the ground of fraud or intention.”
We are not advised how the syllabus was made up in the Supreme Court of North Carolina in this case, but assume from the fact that this syllabus does not fairly state the propositions of law enunciated by the court, that it was made up by a reporter, and not by the judges. The language of Henderson, J.,in this opinion is frequently quoted in support of the general rule that co-sureties may be required to share the indemnity given by the principal, though given *653 for the benefit of one or more, and not for all, and a part of it seems to be applicable to the case in hand. Speaking of indemnity taken by one surety for his own benefit, the learned judge says:
“In such cases courts of equity convert him into a trustee, not permitting him to allege his own turpitude or selfishness as a protection, for they enter into the agreement under a belief of perfect equality, trusting, apparently, to the same laws of indemnity, and to the united exertions of each other to avoid harm severally; therefore, to take an indemnity is a fraud upon the rest, and more especially, as it lessens the liability of the principal to indemnify the others, and if taken without such secrecy, it is presumed to be designed for the benefit of all, and an indemnity fairly obtained.”
It will be seen that- this opinion is quite as appropriate, applied to one who takes the indemnity before he signs, as to one who takes such indemnity after he signs, provided,of course, that it is done without the knowledge or consent of one who expects that others signing will become co-sureties with him, and as such share all the chances of their undertaking, That the fact that the consent of the co-surety to the taking of the special indemnity by his co-surety with his knowledge and consent was the controlling fact influencing the decision of the court in this case; and that the case has been so understood by our own supreme court, is made apparent by the reference of Chief Justice Johnson, to this decision, in the course of his opinion in the case of Leggett v. McClelland, 39 Ohio St., 624, where he says:
“In Deering v. Earl of Winchelsea, 1 Lead. Cas. in Equity, 103, Lord Ch. Barn Eyre says ‘That contribution is bottomed, and fixed on general principles of justice, and does not spring from contract, though contract may qualify it.’ See notes to above case, p. 171, 4th edition. An instance of such qualification is found in Moore v. Moore, 4 Hawks (N. C.) 15 Am. Dec., 532, where one co-surety, in consideration of his becoming such, stipulated for and re-’ *654 ceived, with the consent of his co-sureties, separate indemnity from the principal. It was held that the co-sureties; could only share in the surplus after such surety had been fully indemnified. Such indemnity was not in fraud of the rights of co-sureties. The general rule however is as stated, and the reason on which it rests is, that one who takes indemnity from the principal is, in equity, a trustee for all who are equally bound. As the taking of such indemnity from the principal lessens his ability to pay, it would be a fraud on his co-sureties to allow him to convert it to his sole use in the absence of their consent.”
In the case of Williams H. Titcomb v. John McAlister, 17 Maine, 353, the facts were as follows: Plaintiff being an accommodation endorser upon a de mand note of one thousand dollars, and subsequently becoming co-surety with tne defendant upon another note of the same principaltfor sixteen hundred dollars, at the time of signing the last note secured himself on both notes by taking a mortgage upon certain property of the principal. It was held that the plaintiff might recover from his co-surety one-half of the amount which he might be • required to pay in discharge of the obligation upon which they were co-sureties after applying thereto the amount realized from such security and applicable thereto,
It will be readily seen that if the court had been of the opinion and had held that the co-surety receiving this indemnity might apply it all on his own account, it would not have so limited his recovery. The rule required him to share the indemnity with his co-surety, and this, notwithstanding the fact that he took this indemnity in the first instance for his own exclusive benefit and at the time he signed the obligation upon which his co-surety was bound. But a clearer case, and one in the conclusions of which we fully concur, and which seems to us to be decisive of this case,is that of Cannon et al. v. Connaway and Willen, 5 Del. Chancery, 559, decided in 1884. After diligent search and *655 an examination of many authorities,we find no casein which the law as laid down in this case, is qualified or doubted. In this case Cannon and others were co-sureties with Connoway on the bond of one Kollock. At the time Connoway became surety, Kollock executed to him a bond for his indemnity. The co-sureties were obliged to pay the debt for which they were so bound as suretisq'ior Kollock. Connoway received the indemnity secured to him by the indemnifying bond given him by Kollock. His co-sureti^ sued to compel him to share this indemnity. In the course of his opinion the Chancellor says:
“A co-surety cannot, at the time he signs an obligation with his co-sureties, take an indemnity from the principal which shall inure for his sole benefit.
“If an indemnity be so taken,it shall inure to the benefit of all the sureties; and if that benefit be denied and refused, equity will afford relief. * * * One surety may agree that the principal may give a separate indemnity to a co-surety for his individual benefit to induce such co-surety to become such in a bond or obligation; but, without such consent by the surety he will be entitled equally to share the indemnity. * * * The taking of an indemnity security for the benefit of one or a part of the sureties is a violation of good faith.
“All the sureties believe, and have a right to believe, that all who sign as sureties are equally answerable for the burdens and liabilities which suretyship imposes.
“The very instrument signed warrants the belief of a common obligation; and any act done by a co-surety, intended to defeat the just expectations of another, and to impose on that other surety greater liabilities than himself in the suretyship, is a fraud in equity, and, if permitted to be successful, the principle which lies at the very basis of suretyship would be destroyed.” * * *
“It was contended in the argument in this cause that the indemnity which Connoway took,was executed and delivered to him before he became surety. The proof as to the exact moment when he took,it does not appear. This fact is manifest — that he took it with the intention of becoming one *656 of the sureties, if the indemnity should be given. If not taken after the bond was signed by him, it was taken on the same day and immediately before signing the bond, and when he signed with his co-sureties, he did not disclose the fact that he then possessed this personal indemnity.
“Under such circumstances, all the other co-sureties, relying upon the good faith, not only of Robert H. Kollock, but of all his sureties on the bond, trusted, as said by Henderson, J., in Moore v. Moore, 4 Hawks, 358, apparently to the same laws of indemnity, and to the mutual exertions of each other to avoid harm severally.
“What would have been the consequence of permitting the defendants to take an indemnity, the benefits of which would inure only to themselves, and from the benefit of which their co-sureties would be excluded? If such should be the operation and effect of the indemnities taken by them, then the taking of them lessened the ability of Robert H. Kollock to indemnify the other sureties.
“The same principle I have announced would equally apply if it was distinctly proved that Connoway’s indemnity was taken before he signed the bond. The time of signing the bond is immaterial. The equities of the sureties will not thereby be affected; they all have equal equities which are enforceable in the court. ’’
Following and relying upon the doctrine of this case, which seems to us to be reasonable and just and consistent with the general principles governing the rights and relations of co-sureties, we hold that the defendant Richcreek is bound to share the bank stock, or proceeds thereof, by him received from Rogers as before stated, with his co-surety, the plaintiff Niece.
It appearing that Richcreek has, with the consent of Rogers, treated the stock as his own ever since it was so assigned to him, whereby he has received whatever dividends and profits may have accrued thereon, and that the stock now is of greater value than it was when so assigned to Richcreek, but that it was of the value of eleven hundred dollars when so assigned, we hold that Richcreek must ac *657 count to Niece for five hundred and fifty dollars, with interest thereon from the date of such transfer, to-wit: the 17th of January, 1891. A decree will be entered accordingly and against Richcreek for the costs.
W. M. Molhoaine, for Plaintiff.
Frank Taylor, for Defendants.